**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0574-17T4

K.S.,

     Plaintiff-Respondent,

v.

D.J.S.,

     Defendant-Appellant.

_____

Submitted April 30, 2019 – Decided May 23, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FM-07-0275-13.

D.J.S., appellant pro se.

Einhorn Harris Ascher Barbarito & Frost PC, attorneys for respondent (Jhanice V. Domingo, of counsel and on the brief; Matheu D. Nunn and Jessie M. Mills, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant D.J.S.[1] appeals from that part of an August 21, 2017 Family Part amended order denying his application for a downward modification of alimony and granting plaintiff K.S.'s application for counsel fees. Having considered the parties' arguments in light of the relevant legal principles, we reverse the parts of the August 21, 2017 order which denied defendant's motion for a downward modification of his alimony obligation and awarded plaintiff counsel fees, and remand for further proceedings consistent with this opinion.

The parties were divorced by way of a November 28, 2012 judgment, which incorporated the terms of a Marital Settlement Agreement (MSA) reached approximately two months earlier. Under Article III, paragraph one of that agreement, defendant acknowledged that after twenty-one years of marriage, plaintiff had a "limited ability to become self-supporting," and was in "need of financial support and maintenance." He agreed to pay plaintiff $3400 monthly as permanent alimony.

Paragraph two of the MSA required defendant to pay "additional alimony" in the amount of one-third of any income he earned in excess of $139,000, up to a maximum of $12,000 per year. Pursuant to paragraphs four and five,

---

[1] We refer to the parties by their initials to protect their privacy.

A-0574-17T4

defendant's alimony obligation would terminate on the death of either party, or if plaintiff remarried, and could be modified pursuant to a written agreement of the parties, or as permitted under New Jersey law.

In early 2015, defendant filed the first of two motions to modify his alimony obligation. On June 26, 2015, the court issued an order denying defendant's application.[2]

Nearly two years later, on May 11, 2017, plaintiff filed a motion to enforce litigant's rights claiming defendant failed to comply with the terms of the MSA by refusing to pay his alimony obligation and one-third of the bonuses he received from 2013-2016. She also requested that defendant pay outstanding arrears, and produce un-redacted tax, income, and bonus documentation from 2013 to 2016, among other relief. Plaintiff also sought attorney's fees and sanctions.

On July 6, 2017, defendant filed a cross-motion seeking, for the second time, an order modifying the MSA, reducing his alimony obligations, and for other relief unrelated to the issues raised on appeal. He maintained that the parties had experienced "materially changed circumstances" since the MSA was

---

[2] The parties have not provided us with a copy of the transcript from the June 26, 2015 proceeding.

A-0574-17T4

executed. Specifically, defendant claimed that plaintiff had obtained full-time employment for a multinational company, had voluntarily agreed to pay for one of their daughter's graduate school tuition, and "her earnings including alimony . . . far exceeded $100,000 and exceeded [his] compensation less alimony." Defendant explained that he had not paid the alimony owed to plaintiff because he did not have enough money and believed that they "were negotiating a compromise . . . and because [he] believed [he] would receive a necessary credit through settlement."

Defendant also certified that he was in debt, and that his law firm had downsized since he executed the MSA, which limited his professional opportunities and reduced his income substantially. Defendant specifically noted that his salary in 2012, when the MSA was executed, was $139,000, but in 2014, it was reduced by $7500 and remained at $131,500. Moreover, he stated that since 2012, his law firm lowered his base salary and perquisites.

Defendant calculated that his monthly expenses were $5843 in addition to $4000 for alimony and child support obligations. He claimed that he earned $7641.18 per month, which was not sufficient to meet his expenses. He requested that his monthly obligations be retroactively reduced to $2050 and that plaintiff's motion regarding the unpaid alimony be denied.

4

As exhibits to his certification, defendant included his 2017 Case Information Statement (CIS), as well as 2014, 2015, and 2016 W-2s, several paystubs, and his 2015 tax return. The 2017 CIS stated his 2016 salary was $157,536.30 and that he paid $31,682 in taxes, leaving a net annual income of $125,854.30. Defendant listed his net worth as negative $70,463, with $93,463 in liabilities. Defendant's W-2 reflected the following amounts in wages: $140,573.63 in 2014, $126,193.15 in 2015, and $157,563.30 in 2016. Defendant included only his 2015 tax return, which confirmed his income as $126,193.

In her reply certification, plaintiff stated that defendant acted in bad faith "by purposefully concealing his true financial circumstances" and noted his failure to comply with her requests for his relevant documentation. She certified that defendant earned over $139,000 in 2014 and 2016, and requested that he be ordered to pay his arrears. Plaintiff rejected defendant's claims of financial difficulties, given defendant's documented lifestyle and increased budget. She maintained that the MSA specifically accounted for any fluctuation in income and asserted that defendant "suspiciously omit[ted]" information about his income and perquisites in 2013.

As exhibits to her reply certification, plaintiff included defendant's 2015 and 2017 CIS, and his 2014 and 2016 W-2s. Defendant's 2015 CIS reported his

5

prior year's gross income as $140,573 and net income as $113,436, with $27,137 paid towards taxes. He stated that his annual salary, as of 2015, was $131,500, and calculated his and his daughters' monthly expenses as $5,547.

In a July 21, 2017 oral decision, the motion judge denied defendant's cross-motion and concluded he failed to establish a permanent change in circumstances warranting either a plenary hearing, or a modification of his alimony obligation. The court granted, in part, plaintiff's motion and ordered defendant to continue to pay his alimony obligations as outlined in the MSA, and directed him to pay any outstanding arrears through wage garnishment.

The court also ordered defendant to provide copies of his income tax returns from 2013 to 2016, to ensure defendant was complying with Article III, paragraph two of the MSA that entitled plaintiff to one-third of defendant's bonuses. Finally, the court denied plaintiff's request for sanctions, but awarded plaintiff $5500 in attorney's fees, $3000 less than the amount plaintiff's counsel requested. In awarding plaintiff counsel fees, the court noted that defendant "forced [plaintiff] . . . into filing this application," by failing to provide his financial documentation, and failing to pay plaintiff alimony, medical reimbursements, and her portion of his bonuses.

A-0574-17T4

With respect to his alimony obligation, the court explained that other than the statements in his certification, defendant provided "absolutely no proof" establishing a substantial change in circumstances and warranting a plenary hearing. Before reaching her decision, the court reviewed all of the submitted evidence, including defendant's W-2s, which failed to support a reduction in defendant's income from the time the MSA was entered.

The court entered an order on July 21, 2017 reflecting its findings from the hearing. In addition to ordering defendant to pay alimony and attorney's fees, the July 21, 2017 order also required defendant to pay his child support obligation, ordered him to reimburse plaintiff for unreimbursed health expenses incurred by their daughter, and required defendant to pay for their daughter's trip to Hong Kong. The court entered amended orders on July 31, 2017, and again on August 21, 2017.[3] This appeal followed.

On appeal, defendant argues that the court committed error by denying his request to modify his alimony obligation. He also maintains he was entitled to

---

[3] The July 31, 2017 amended order required defendant to "pay [p]laintiff directly until wage execution has been established." The August 21, 2017 amended order added that defendant's child support obligation for the parties' younger daughter would terminate on March 16, 2019, on her twenty-third birthday. As noted, defendant has only challenged that portion of the August 21, 2017 amended order denying his modification of alimony and awarding plaintiff attorney's fees.

A-0574-17T4

a plenary hearing because he demonstrated a substantial change of circumstances warranting modification of the alimony award. Finally, he contends the court erred in granting plaintiff attorney's fees without considering the factors set forth in Rule 5:3-5(c), the parties' financial circumstances, and any bad faith litigation conduct.

We review a court's decision on a motion to reduce alimony obligations and to award a party reasonable attorney's fees under an abuse of discretion standard. Innes v. Innes, 117 N.J. 496, 504 (1990); Addesa v. Addesa, 392 N.J. Super. 58, 78 (App. Div. 2007). Additionally, we owe special deference to the expertise of the Family Part. See Cesare v. Cesare, 154 N.J. 394, 413 (1998). With respect to a court's factual findings, reversal is warranted only when those findings are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of No. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)). However, the trial court's "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We first address defendant's claim that the court committed error when it failed to conduct a plenary hearing and refused to reduce defendant's alimony obligation. Alimony is generally set based on the marital standard of living. Lepis v. Lepis, 83 N.J. 139, 150 (1980) ("The supporting spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival."). Alimony amounts thus "contemplate[s] . . . continued maintenance at the standard of living [the spouse] had become accustomed to prior to the separation." Ibid. (quoting Khalaf v. Khalaf, 58 N.J. 63, 69 (1971)).

Alimony orders are subject to review and modification upon a showing of "changed circumstances." N.J.S.A . 2A:34-23; Crews v. Crews, 164 N.J. 11, 24 (2000) (quoting Lepis, 83 N.J. at 146). The party seeking to modify an existing support obligation "has the burden of showing such 'changed circumstances' as would warrant relief . . . ." Lepis, 83 N.J. at 157. The party moving for modification must present a prima facie showing of changed circumstances to justify a plenary hearing on the matter. Miller v. Miller, 160 N.J. 408, 420 (1999). Only after such a showing is made will the court order discovery and conduct a hearing to "determine the supporting spouse's ability to pay." Ibid.

If the movant is arguing changed circumstances based on a reduction in income, the movant must show specifically "that changed circumstances have

substantially impaired the ability to support himself or herself." Crews, 164 N.J. at 28 (quoting Lepis, 83 N.J. at 157). This standard "must be understood to mean the ability to maintain a standard of living reasonably comparable to the standard enjoyed during the marriage." Ibid.

Changed circumstances can also be established based on the supported spouse's improved economic situation. Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997) ("[A] payor spouse is as much entitled to a reconsideration of alimony where there has been a significant change for the better in the circumstances of the dependent spouse as where there has been a significant change for the worse in the payor's own circumstances."). Thus, the movant could make a prima facie case for changed circumstances by showing significant improvements in the supporting spouse's financial status. Ibid.

Here, we conclude the record supports the court's conclusion that defendant did not make a prima facie case of changed circumstances based on his decrease in income. At the time of the motion, defendant was employed by the same law firm, in the same position as a partner, as he had been when he executed the MSA in 2012. In addition, his base salary had increased in that time.

A-0574-17T4

However, the court made no findings with respect to defendant's assertion of plaintiff's improved financial situation. As defendant's application for modification of his alimony obligation was based on both his decreased income and plaintiff's increased income, he was only required to establish a change in circumstances as a result of either his reduced income or plaintiff's improved financial position. See Stamberg, 302 N.J. Super. at 43. Thus, the court's analysis should not have ended with the alleged reduction in defendant's compensation.

Therefore, we remand for the court to make findings regarding whether plaintiff's full-time employment which she did not contest and, according to defendant, permitted her to voluntarily pay her daughter's graduate school tuition, established a prima facie change in circumstances. If, after consideration of all relevant facts, the court determines such changed circumstances have occurred, the judge shall order discovery and thereafter determine if a plenary hearing is necessary to resolve the motion.

In light of our decision, we vacate the award of counsel fees. Nothing in our opinion, however, precludes the court from issuing such an award, as appropriate, at the conclusion of the remand proceeding.

A-0574-17T4

To the extent we have not directly addressed the balance of the defendant's arguments, we find them to lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

The provisions of the August 21, 2017 order denying defendant's motion for downward modification of his alimony obligation and awarding plaintiff attorney's fees are reversed, and the matter remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION